UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.F., a minor, individually and on behalf of a proposed class,<br><br>Plaintiff,<br><br>v.<br><br>SAN DIEGO COUNTY UNIFIED SCHOOL DISTRICT,<br><br>Defendant. | Case No.: 19-CV-2495-CAB-LL<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br><br>[Doc. No. 15] |

This matter is before the Court on Defendant San Diego Unified School District's ("SDUSD") motion to dismiss Plaintiff's First Amended Complaint. The motion has been fully briefed and the Court deems it suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, the motion to dismiss is granted.

**I.  BACKGROUND**

Plaintiff J.F. is a minor who qualifies as an individual with a disability under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. [Doc. No. 13 at ¶ 5.] Plaintiff is enrolled as a public-school student at Defendant SDUSD's Gage Elementary School and alleges that as far back as 2017, SDUSD has known that its staffing and funding for special education services was inadequate when it was reported that the

1

school board cut the department's budget significantly. [*Id.* at ¶¶ 15—18.]

Plaintiff suffers from autism spectrum disorder and has speech issues. [*Id.* at ¶ 27.] SDUSD and Plaintiff's parents developed an Individualized Education Plan ("IEP") for Plaintiff which entitles him to, among other things, a 1:1 aide. [*Id.* at ¶¶ 27—30.] In October 2018, Plaintiff's mother learned that the 1:1 aide was being removed from Plaintiff's classroom, so she wrote to the school principal that removal of the aide would be detrimental to Plaintiff's education. [*Id.* at ¶ 31.] After repeated attempts contacting school officials and board members to follow up on the issue and the failure to provide an updated IEP through April 2019, Plaintiff finally received a 1:1 aide in May 2019, but only for the remaining three weeks of the school year. [*Id.* at ¶¶ 32—40.] Throughout the 2019-2020 school year, SDUSD has again failed to consistently provide Plaintiff with the 1:1 aide, which has resulted in an escalation of problematic behaviors and unnecessary difficulties, ultimately denying Plaintiff of a proper education. [*Id.* at ¶¶ 41—46.]

On February 10, 2020, Plaintiff J.F., by and through his guardians ad litem, individually and on behalf of a proposed class, filed the First Amended Complaint ("FAC") alleging: (1) violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400; (2) civil rights violations, 42 U.S.C. § 1983; (3) violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; and (4) violations of Section 504 of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 701. [Doc. No. 13.] On February 24, 2020, Defendant SDUSD moved to dismiss the FAC without leave to amend. [Doc. No. 15.]

## II. LEGAL STANDARD

### A. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031

(9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) ("Conclusory allegations of law are insufficient to defeat a motion to dismiss"). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or . . . allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Generally, when dismissing a complaint for failure to state a claim, the court should deny opportunity to amend only if amendment would be futile. *See Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988) (dismissal without leave to amend is appropriate if amendment "could not possibly cure the deficiency"), amended, 856 F.2d 111 (9th Cir. 1988).

### B. Exhaustion Under the IDEA

"Judicial review under the IDEA is ordinarily available only after the plaintiff exhausts administrative remedies." *Doe By & Through Brockhuis v. Arizona Dep't of Educ.*, 111 F.3d 678, 680-81 (9th Cir. 1997) (citing 20 U.S.C. § 1415(e)(2)). So too, "a plaintiff bringing suit under the ADA, the Rehabilitation Act, or similar laws must in certain circumstances—that is, when 'seeking relief that is also available under' the IDEA—first exhaust the IDEA's administrative procedures." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 750 (2017) (citing 20 U.S.C. § 1415(l)). However, "this exhaustion requirement is not a rigid one, and is subject to certain exceptions." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1302-03 (9th Cir. 1992).

The exhaustion of such administrative remedies is not required when "resort to the administrative process would be futile or inadequate," or when "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." *Id*. at 1303-04 (quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)). "Administrative remedies are generally inadequate where structural, systemic reforms are sought." *Id*. at 1309. "[A] claim is 'systemic' if it implicates the integrity or reliability of the IDEA

dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act; but that it is not 'systemic' if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem." *Doe*, 111 F.3d at 682. "In determining whether these exceptions apply, [a court's] inquiry is whether pursuit of administrative remedies under the facts of a given case will further the general purposes of exhaustion and the congressional intent behind the administrative scheme." *Hoeft*, 967 F.2d at 1303.

The Ninth Circuit has read the exhaustion requirement of IDEA to "appl[y] differently to class actions than to suits brought by individuals, inasmuch as each class member need not exhaust before a suit is brought." *Hoeft*, 967 F.2d at 1309. However, "the mere fact the complaint is structured as a class action seeking injunctive relief, without more, does not excuse exhaustion." *Id*. at 1309.

### C. Exceptions to the Exhaustion Requirement

Exhaustion may be excused when: "(1) use of the administrative process would be 'futile,' (2) the claim arises from a policy or practice 'of general applicability that is contrary to law,' or (3) it is 'improbable that adequate relief can be obtained by pursuing administrative remedies (e.g. the hearing officer lacks the authority to grant the relief sought).'" *Paul G. by and through Steve G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1100 (9th Cir. 2019) (quoting *Hoeft*, 967 F.2d at 1303-04). However, futility or inadequacy is not established simply because the body hearing the administrative appeal lacks jurisdiction to provide all or some of the relief requested. *See Paul G.*, 933 F.3d at 1002 (futility or inadequacy did not exist even though OAH did not have jurisdiction to order "structural and systemic statewide relief" because the "principal purpose of requiring administrative exhaustion, however, is to ensure the agency has had an opportunity to rule on a claim before a plaintiff goes to court," on a claim seeking both damages and injunctive relief).

Under the second exemption, a claim is systemic, and "therefore entitled to the

4

19-CV-2495-CAB-LL

dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act; but that it is not 'systemic' if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem." *Doe*, 111 F.3d at 682. "In determining whether these exceptions apply, [a court's] inquiry is whether pursuit of administrative remedies under the facts of a given case will further the general purposes of exhaustion and the congressional intent behind the administrative scheme." *Hoeft*, 967 F.2d at 1303.

The Ninth Circuit has read the exhaustion requirement of IDEA to "appl[y] differently to class actions than to suits brought by individuals, inasmuch as each class member need not exhaust before a suit is brought." *Hoeft*, 967 F.2d at 1309. However, "the mere fact the complaint is structured as a class action seeking injunctive relief, without more, does not excuse exhaustion." *Id*. at 1309.

### C. Exceptions to the Exhaustion Requirement

Exhaustion may be excused when: "(1) use of the administrative process would be 'futile,' (2) the claim arises from a policy or practice 'of general applicability that is contrary to law,' or (3) it is 'improbable that adequate relief can be obtained by pursuing administrative remedies (e.g. the hearing officer lacks the authority to grant the relief sought).'" *Paul G. by and through Steve G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1100 (9th Cir. 2019) (quoting *Hoeft*, 967 F.2d at 1303-04). However, futility or inadequacy is not established simply because the body hearing the administrative appeal lacks jurisdiction to provide all or some of the relief requested. *See Paul G.*, 933 F.3d at 1002 (futility or inadequacy did not exist even though OAH did not have jurisdiction to order "structural and systemic statewide relief" because the "principal purpose of requiring administrative exhaustion, however, is to ensure the agency has had an opportunity to rule on a claim before a plaintiff goes to court," on a claim seeking both damages and injunctive relief).

Under the second exemption, a claim is systemic, and "therefore entitled to the

general applicability exception, if it concerns 'the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act.'" *Paul G.*, 933 F.3d at 1101-02 (quoting *Doe*, 111 F.3d at 682).

**III. DISCUSSION**

SDUSD moves to dismiss the FAC primarily contending that Plaintiff failed to exhaust the IDEA's administrative remedies. The parties do not dispute that the IDEA's exhaustion requirements apply equally to each of Plaintiff's causes of action. However, Plaintiff avers that he and the class satisfy all three of the exceptions to be excused from exhaustion.

**A. Futile and Inadequate**

Plaintiff argues that exhaustion in this case is both futile and inadequate because SDUSD had already agreed to provide a 1:1 aide to Plaintiff and the class but fails to provide the aides. Therefore, Plaintiff contends that the best outcome he and the class would receive from an administrative proceeding is mere confirmation that SDUSD failed to provide the 1:1 aides.

Plaintiff has not shown that the administrative process in this case would be futile or inadequate. "[T]he relevant inquiry is whether the administrative process is adequately equipped to address and resolve the issues presented." *Hoeft*, 967 F.2d at 1309. The relief the plaintiffs sought in *Hoeft* included an injunction requiring the school district "to develop 'appropriate criteria . . . for evaluating each child's need for [services]' [and] to afford parents all the procedural rights to which they [were] entitled under the IDEA," yet the Ninth Circuit stated "[t]he issues in [Hoeft] consist[ed] primarily of questions of substantive educational policy, issues which the administrative process was specifically designed to address. Moreover, even though injunctive relief is unavailable, the administrative process has the potential for producing the very result plaintiffs seek, namely, statutory compliance." *Hoeft*, 967 F.2d at 1302, 1309. Similarly, the Court finds that the administrative process has the potential for producing the results Plaintiff and the

5

class seek in this case. Ultimately, Plaintiff and the class seek consistent 1:1 aides as entitled by each of their IEP's. Whether that involves additional funding or resources remains in question and the administrative process should be able to resolve such issues. Accordingly, Plaintiff has not shown that the administrative process in this case would be futile or inadequate.

### B. Facially Illegal Policy

Plaintiff also argues that his complaint presents a facially illegal policy and purely legal question. The purported policy is SDUSD's failure to comply with Plaintiff's and the class members' IEP's—specifically, the failure to allocate adequate funding and resources to provide 1:1 aides.

Even where local school policies appear on their face to violate the IDEA, administrative exhaustion may be necessary to give the state a reasonable opportunity to investigate and correct such policies. *See Doe v. Maher*, 793 F.2d 1470, 1492 (9th Cir.1986) (parents must give state officials "adequate notice of the local agency's noncompliance, and the state must be afforded a reasonable opportunity to compel local compliance"), *modified on other grounds sub nom. Honig v. Doe*, 484 U.S. 305 (1988). Challenging an individualized education program by recourse to the IDEA's procedural scheme affords the state such an opportunity. Although hearing officers lack power to adjudicate questions of statutory compliance, they are empowered to order the provision of an appropriate education program for an individual child, as guaranteed by the IDEA. *Cf. Robinson v. Pinderhughes*, 810 F.2d 1270, 1271, 1274–75 (4th Cir.1987) (school district's failure to implement hearing officer decision ordering private placement where services not available in district is actionable under 42 U.S.C. § 1983 as deprivation of right secured by federal law).

Plaintiff's characterization of a systemic policy by SDUSD failing to allocate enough resources to provide 1:1 aides appears overstated to overcome the exhaustion requirements. As discussed above, Plaintiff contends that SDUSD fails to provide aides as prescribed by each students' IEP. However, it is not ascertainable to what extent each

6

students' IEP prescribes a 1:1 aide with respect to purpose, duration, educational needs, etc. This requires specific factual inquiry which the administrative courts are well equipped to analyze to develop the necessary factual record. The purported policies challenged by Plaintiff in this case are "the kind of technical questions of educational policy best resolved with the benefit of agency expertise and a fully developed administrative record." *Hoeft*, 967 F.2d at 1305 (citations omitted). Further, even if the failure to allocate adequate resources appears on its face to violate the IDEA, the Ninth Circuit has held that administrative exhaustion may still be necessary to give the state a reasonable opportunity to investigate and correct such policy. Accordingly, Plaintiff has not shown that this case presents a facially illegal policy such that administrative exhaustion should be excused.

### C. Furthering the Purpose of the Exhaustion Doctrine

The Court is also not persuaded by Plaintiff's contention that requiring exhaustion in this case would serve none of the purposes of the IDEA's exhaustion requirements. "The exhaustion doctrine embodies the notion that 'agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer.'" *Hoeft*, 967 F.2d at 1303 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). "Exhaustion of the administrative process allows for the exercise of discretion and educational *expertise* by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Id.* (emphasis added). As the Supreme Court has observed, "courts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy,'" and Congress shared that view when it adopted the IDEA. *Board of Educ. v. Rowley*, 458 U.S. 176, 208 (1982) (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973)).

Accordingly, the Court finds that the administrative process can address Plaintiff's and the class members' disputes and, if Plaintiff and the class remain aggrieved after

7

exhaustion of the administrative process, they can bring a civil action at that time. As stated by the Ninth Circuit, the IDEA's exhaustion requirement "recognizes the traditionally strong state and local interest in education, as reflected in the statute's emphasis on state and local responsibility." *Hoeft*, 967 F.2d at 1303. Thus, it would be inappropriate for the Court to consider this matter before Plaintiff and the class give state and local interests the opportunity.

### IV. CONCLUSION

For the reasons set forth above, Defendant SDUSD's motion to dismiss the FAC is **GRANTED**. Plaintiff's FAC is **DISMISSED without leave to amend**. The Clerk of Court shall **CLOSE** this case.

It is **SO ORDERED**.

Dated: April 7, 2020

Hon. Cathy Ann Bencivengo
United States District Judge